UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ROBERT WARNKE,

                            Plaintiff,

        - against -

CVS CORPORATION,

                            Defendant.
------------------------------------------------------------X

**ORDER**

CV 09-397 (ADS) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

**I.    INTRODUCTION**

Plaintiff Robert Warnke ("Plaintiff" or "Warnke") commenced this action on January 30, 2009 against his former employer, Defendant CVS Corporation[1] ("Defendant" or "CVS"), alleging employment discrimination on the basis of age in violation of federal and New York State laws. Currently before this Court is Plaintiff's motion [DE 13] to quash subpoenas *duces tecum* served by Defendant on Plaintiff's three subsequent employers (collectively, the "Subpoenas"). *See* DE 13, Ex. 1. Each of the Subpoenas seeks "inspection and copying of the following documents . . . .":

> Any and all documents relating to Robert Warnke's employment with [EMPLOYER] including but not limited to his employment application, his resume, his personnel file, payroll records and offer of employment. Mr. Warnke's social security number is XXX-XX-XXXX and his date of birth is XX/XX/XXXX.[2] This information is

---

[1] Defendant's counsel notes that his client's name is "CVS Pharmacy, Inc." and was improperly pleaded as "CVS Corporation." *See* DE 14. If this is the case, the parties should file a Stipulation containing an amended caption to be "so ordered" by the Court.

[2] The Subpoenas contain the last four digits of Plaintiff's social security number and his birth date. However, given the sensitive nature of this information and in light of the Eastern District's rules regarding the filing of such material, such information is omitted here.

>     to be used solely in connection with the search for the requested
>     documents.

*Id*. For the following reasons, Plaintiff's Motion to Quash is GRANTED.

## II. DISCUSSION

In the Subpoenas at issue here, Defendant seeks Plaintiff's employment records, including his employment application, resume, personnel file, payroll records and offer of employment, from three companies for which Plaintiff worked following his termination by Defendant -- Walgreen Co., d/b/a Walgreen's; Fire Island Water Taxi, Inc.; and Sagamore Yacht Club. Plaintiff currently works for Walgreen's and Fire Island Water Taxi.

### A. Plaintiff's Standing To Oppose The Subpoena

As a threshold matter, it is undisputed that Plaintiff has standing to move to quash the non-party subpoenas. Generally, standing to quash a non-party subpoena exists where the plaintiff asserts a legitimate privacy interest in the information sought. *See Ireh v. Nassau Univ. Med. Center*, No. CV 06-09, 2008 WL 4283344, at *3 (E.D.N.Y. Sept. 17, 2008) (citations omitted); *Mirkin v. Winston Res., LLC*, No. 07 Civ. 02734, 2008 WL 4861840, at *1 (S.D.N.Y. Nov. 10, 2008) (citation omitted). Here, Plaintiff has a legitimate privacy interest in information regarding his subsequent employment and therefore has standing to bring the instant motion. *See Mirkin*, 2008 WL 4861840, at *1 (citing *During v. City Univ. of N.Y.*, No. 05 Civ. 6992, 2006 WL 618764, at *1 (S.D.N.Y. Mar. 9, 2006), rev'd on other grounds, 2006 WL 2192843 (S.D.N.Y. Aug. 1, 2006)).

### B. Relevance Of The Discovery Sought By The Subpoenas

A subpoena issued to a non-party pursuant to Rule 45 is "subject to Rule 26(b)(1)'s overriding relevance requirement." *Ireh*, 2008 WL 4283344, at *5 (quoting *During*, 2006 WL 2192843, at *2). Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense. . . ." Fed. R. Civ. P. 26(b)(1). "Relevance" under Rule 26 is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *Barrett v. City of N.Y.*, 237 F.R.D. 39, 40 (E.D.N.Y. 2006) (noting that the information sought "need not be admissible at trial to be discoverable"). However, "upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court . . . may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense. . . ." *During*, 2006 WL 618764, at *1 (quoting Fed. R. Civ. P. 26(c)).

Plaintiff argues that the information requested in the Subpoenas is "neither relevant nor reasonably likely to lead to relevant evidence[,]" and the broad language contained in the Subpoenas "seems to indicate that the defendant is seeking documents related to something other than mitigation[,]" which, as Plaintiff concedes, would be relevant. DE 13. Plaintiff further asserts that the requested information is not relevant in light of the fact that Plaintiff has already produced copies of his income tax returns for the years 2005 through 2008 and copies of his 2009 pay stub from both of his current employers. *Id*. Finally, Plaintiff contends that, even if the requested information is deemed to be relevant, a protective order should be issued to shield plaintiff "from the 'annoyance, embarrassment [or] oppression' of having current employers

made aware of the instant lawsuit[,]" which, Plaintiff claims, would "cause further damage to the prospects of his continued employment." *Id*.

Defendant, on the other hand, argues that the requested information constitutes discoverable material which is relevant to its mitigation defense. Specifically, Defendant contends that in addition to the documents Plaintiff has already produced, Defendant is entitled to (i) the statements Plaintiff made to subsequent employers as to the reason he was unemployed; (ii) the types of jobs Plaintiff has held since termination; (iii) the fringe benefits he received at each subsequent job; and (iv) the reasons, if any, Plaintiff ceased working at each subsequent job. DE 14. Finally, Defendant asserts that it is entitled "to obtain this information directly from the source of [Plaintiff's] subsequent jobs." *Id*. (citation omitted).

The Court disagrees with Defendant's argument that it is entitled to these categories of information as part of its mitigation defense. First, Defendant seeks discovery regarding "the statements plaintiff made to the subsequent employers as to the reason he was unemployed" [DE 14], which presumably refers to the request for Plaintiff's employment application contained in the Subpoenas. However, Defendant has not provided any case law to support its entitlement to Plaintiff's subsequent employment applications, and this Court finds that such information is not reasonably calculated to lead to other matter that could bear on any issue that is or may be in the case.

Second, Defendant seeks discovery pertaining to "the types of jobs plaintiff has held since termination (including the positions he has held), i.e., whether he 'lowered his sights' too quickly or spent his valuable time on menial jobs instead of looking for comparable management positions" [DE 14]. The Court understands this to refer to Defendant's request for Plaintiff's

resume contained in the Subpoenas. However, Defendant has not provided adequate support for its position that it is entitled to this type of discovery and the cases cited by Defendant are easily distinguishable. *Berger v. Iron Workers v. Reinforced Rodmen*, 170 F.3d 1111 (D.C. Cir. 1999), does, as Defendant asserts, discuss the "lowered sights doctrine." However, the discussion in the *Berger* case occurs in the context of a defendant union's challenge to a special master's award of back pay damages to a class of plaintiffs in a racial discrimination suit brought under Title VII. The court in *Berger* stated as follows:

> A claimant forfeits his right to back pay if he refuses a job substantially equivalent to the one he was denied. But the unemployed or underemployed claimant need not go into another line of work, accept a demotion or take a demeaning position. Nor is he required to accept employment at a great distance from his home. On the other hand, a claimant may reasonably conclude that he should lower his sights and seek other work, including work outside the industry. The claimant, after all, cannot afford to stand aside while the wheels of justice grind slowly toward the ultimate resolution of the lawsuit. The claimant needs work that will feed a family and restore self-respect. Indeed, a claimant may be required … to lower his sights by seeking less remunerative work after he has unsuccessfully attempted for a reasonable period of time to locate interim employment comparable with his improperly denied position.

*Berger*, 170 F.3d at 1133-34 (internal quotations and citations omitted). The court in *Berger* further stated that "courts must be careful when applying the mitigation doctrine, and that it would not be unreasonable . . . to resolve doubts in this area in favor of the innocent discriminatee. The burden of establishing facts in mitigation of the back pay liability is therefore *upon the violator*." *Id*. at 1134 (emphasis added; internal quotations and citations omitted). Thus, *Berger* stands for the proposition that a plaintiff who was discriminated against may, due to circumstances outside of his control, be required to "lower his sights" in order to mitigate his losses, and an employer who is liable under Title VII bears the burden of showing that,

5

notwithstanding this rule, Plaintiff failed to mitigate. Moreover, this Court notes that *Berger*, which was decided by the D.C. Circuit Court, is not binding authority upon this Court. Finally, *Berger* is clearly distinguishable from the instant case because the issue pertained to the sufficiency of the proof of damages presented at trial, not whether certain information was relevant and permissible at the discovery stage.

Defendant also cites *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47 (2d Cir. 1998), in support of its position that it is entitled to discovery regarding the types of positions Plaintiff has held since being terminated by Defendant. *Greenway* does, as Defendant asserts, discuss "plaintiff's duty to mitigate under Title VII[,]" [DE 14], but, again, that case was decided in a context distinct from the instant circumstances. In *Greenway*, defendant was found liable for violation of the Americans with Disabilities Act and the New York Human Rights Law for unlawful termination of plaintiff because he was HIV-positive. However, based upon its conclusion that plaintiff failed to mitigate his damages, the Second Circuit vacated a portion of the trial court's award for back and front pay, future health insurance premiums, and future medication costs. *Greenway*, 143 F.3d at 55. In particular, the Second Circuit found that after several months of temporary work, plaintiff failed to seek any further employment. Because there was no evidence that plaintiff undertook "a diligent search for more permanent employment," the court concluded that plaintiff failed to mitigate his damages and, as a result, lost entitlement to some compensatory damages to which he might have otherwise been entitled. *Id*. at 48, 54, 55 ("reiterating the district court's finding that Greenway did not exercise reasonable diligence in finding other suitable employment"). *Greenway* does not support Defendant's right to the requested discovery here since *Greenway*, like *Berger*, relates to the

6

sufficiency of the proof presented at trial regarding damages, not whether certain information was discoverable during the pretrial phase of the case. In addition, *Greenway*, which focused on a plaintiff who failed to look for subsequent permanent employment, is easily distinguishable from the instant case where Plaintiff is currently employed at two jobs. The rule as applied by courts in the Second Circuit is that an unlawfully-discharged employee is obligated to attempt to mitigate his damages by using "reasonable diligence in finding other suitable employment." *Hawkins v. 1115 Legal Serv. Care*, 163 F.3d 684, 695 (2d Cir. 1998). The Second Circuit has stated that "[t]his obligation is not onerous and does not require [plaintiff] to be successful. *Id*. Rather, "[i]n order to reduce the meritorious claimant's entitlement to backpay, the defendant employer has the burden of demonstrating that [plaintiff] has failed to attempt to mitigate" and such burden "may be met by establishing (1) that suitable work existed, and (2) that the employee did not make reasonable efforts to obtain it." *Id*. (citing *Dailey v. Societe Generale*, 108 F.3d 451, 456 (2d Cir. 1997); *Clarke v. Frank*, 960 F.2d 1146, 1152 (2d Cir. 1992)). In light of the fact that Plaintiff is currently engaged in two jobs, it is apparent that he made some efforts to obtain subsequent employment. This is an issue to be tested at Plaintiff's deposition.

Third, Defendant seeks discovery regarding "the fringe benefits [Plaintiff] received at each subsequent job, so that defendant can make an assessment of whether the subsequent jobs offered plaintiff 'comparable' benefits to those he received at CVS" [DE 14]. The Court understands this to refer to the request for Plaintiff's payroll records and offer letter of employment contained in the Subpoenas. However Defendant has not provided any case law to support its entitlement to these documents, and the Court does not see how such information is relevant, particularly where Plaintiff has not asserted claims for loss of fringe benefits.

7

Fourth, Defendant seeks discovery pertaining to "the reasons, if any, plaintiff ceased working at each subsequent job," which, according to Defendant, "is relevant to whether plaintiff (a) voluntarily resigned and thereby willfully incurred a loss of income . . . or (b) was terminated for his own poor performance or misconduct, which would also be relevant to plaintiff's backpay/front pay damages" [DE 14]. The Court understands this to refer to the request for Plaintiff's personnel file contained in the Subpoenas. However, Defendant has not provided adequate support for its position that it is entitled to the reasons plaintiff stopped working at each subsequent job. Defendant relies on *Hawkins v. 1115 Legal Serv. Care*, 163 F.3d 684 (2d Cir. 1998) in support of its position that Plaintiff's reasons for leaving his subsequent job(s) are relevant to whether Plaintiff "voluntarily resigned and therefore willfully incurred a loss of income." However, *Hawkins* does not support Defendant's entitlement to the requested discovery on this basis. Rather, the court in *Hawkins* affirmed a jury's award of backpay and rejected defendant's argument that plaintiff had not taken reasonable steps to mitigate her damages after her termination and noted that "a claimant who voluntarily resigned from comparable employment for personal reasons would not have adequately mitigated damages, *but* a voluntary quit does not toll the back pay period when it is motivated by unreasonable working conditions or an earnest search for better employment." *Hawkins*, 163 F.3d at 696 (emphasis added; internal quotations and citation omitted). Moreover, the *Hawkins* case, like the others discussed above, pertains to the sufficiency of proof of damages at trial, not relevancy at the discovery stage. Similarly, Defendant is not entitled to discovery regarding whether Plaintiff "was terminated for his own poor performance, as such information is not relevant to "plaintiff's backpay/front pay damages." DE 14. In *Brady v. Thurston Motor Lines, Inc.*, 753 F.2d 1269

8

(4th Cir. 1985), to which Defendant refers, the Fourth Circuit examined the effect upon employer liability for back-pay after a Title VII plaintiff has voluntarily left a subsequent employment position. The court in *Brady* held that an employer's back pay liability is not increased as a result of losses willingly incurred by the claimant. *See Chopra v. GE,* 527 F. Supp. 2d 230, 250 (D. Conn. 2007) (discussing *Brady*); *see also EEOC v. Wilson Metal Casket Co.*, 24 F.3d 836, 841 (6th Cir 1994) (noting that the claimants in *Brady* either failed to seek employment or quit jobs for no apparent reason, and as a result, their right to back pay was tolled). Thus, *Brady* is inapposite in the instant case where Plaintiff is currently employed at two jobs. In light of this fact, the requested discovery is not reasonably likely to lead to evidence that Plaintiff willingly incurred and thus failed to mitigate his losses.

## C. Burden Imposed On Plaintiff By The Subpoenas

Even if the discovery sought by Defendant was found to be relevant, this Court must still weigh Defendant's right to obtain that discovery against the burden imposed on Plaintiff. *Mirkin v. Winston Res., LLC*, No. 07 Civ. 02734, 2008 WL 4861840, at *1 (S.D.N.Y. Nov. 10, 2008) (citing *During*, 2006 WL 2192843, at *4 (citing Fed. R. Civ. P. 26(b)(2), 26(c))) "Because '[t]he trial court is in the best position to weight fairly the competing needs and interest of parties affected by discovery,' Rule 26 confers broad discretion to weigh discovery matters." *During*, 2006 WL 2192843, at *4 (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34 (1984)). Moreover, the court may issue an order "to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense . . . ." Fed. R. Civ. P. 26(c).

Here, the Court finds that Defendant has not met its burden to establish a "right" to the particular discovery sought by the Subpoenas. First, Plaintiff is currently employed by two of the

9

three companies on which Defendant served the Subpoenas. As Plaintiff notes in his motion, courts within the Second Circuit have recognized that "[b]ecause of the direct negative effect that disclosures of disputes with past employers can have on present employment, subpoenas in this context, if warranted at all, should be used only as a last resort." *Conrod v. Bank of N.Y.*, No. 97 Civ. 6347 (S.D.N.Y. Jul. 30, 1998) (denying defendant's motion for reconsideration of sanctions for serving Rule 45 subpoena on plaintiff's current employer); *see also Gambale v. Deutsche Bank AG*, No. 02 Civ. 4791, at *2 (S.D.N.Y. Jan. 10, 2003) (granting motion to quash because the Rule 45 subpoenas served on executive search firms with which plaintiff worked before and after her termination because such discovery "would subject plaintiff to necessary annoyance and embarrassment within the meaning of Rule 26(c)"); *Mirkin*, 2008 WL 4861840, at *1 (denying Plaintiff's motion to quash Rule 45 subpoena served on Plaintiff's supervisor at subsequent employer and noting that Plaintiff (i) was no longer worked at the company, and (2) Plaintiff did not claim that her former supervisor was currently engaged in a job search on her behalf).[3]

Moreover, some of the information sought in the Subpoenas has already been produced. For example, Plaintiff has already produced copies of his income tax returns for the years 2005 through 2008 and copies of his 2009 pay stub from both of his current employers. *See Abu v. Piramco Sea-Tac Inc.*, No. C08-1167, 2009 WL 279036, at *2 (W.D. Wash. Feb. 5, 2009) ("the other employers will not be required to provide plaintiff's payroll records because compensation information can be obtained through less intrusive means, like tax records"). Thus, the

---

[3] In light of the clear guidance offered by relevant decisions from the courts in the Second Circuit, it would have been reasonable for Defendant to have explored the means available to obtain this information and then come to the Court with an appropriate application if the information was lacking, instead of proceeding with the Subpoenas served here.

information Defendants seek from Plaintiffs's payroll records has already been produced. Furthermore, contrary to Defendant's assertion,[4] it is not entitled to obtain this information directly from Plaintiff's employers, but rather, must obtain the information from less intrusive means where possible. *Id*. The relevant information sought by Defendant in the Subpoenas can be obtained from whatever records Plaintiff has in his possession or control as well as through Plaintiff's deposition.

## III. CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Quash the non-party subpoenas is hereby GRANTED. An Amended Case Management and Scheduling Order will be entered separately.

**SO ORDERED.**

Dated: Central Islip, New York
February 23, 2010

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge

---

[4] The Court notes that *Mirkin v. Winston Resources, LLC*, No. 07 Civ. 02734, 2008 WL 4861840 (S.D.N.Y. Nov. 10, 2008) does not, as Defendant asserts, stand for the proposition that it is not entitled to obtain this information directly from Plaintiff's employers.